WILLIAM HEINEKAMP and WILLIAM HEINEKAMP, JR.,
    tráding as HEINEKAMP & SON *vs.* SAMUEL P. BEATY
    and MARGARET BEATY, his Wife.

*Security for Costs—Default saved—Trover—Measure of Damages.*

Section 9 of Article 24 of the Code, provides that the plaintiff in any action who fails to comply with the "rule security for costs," by the second day of the next term shall be nonsuited. HELD:

That under this statute, where the plaintiff, after the motion for a non-suit for default, but before the hearing, deposited the amount of the costs in Court, the default was saved.

A count "for that the defendants converted to their own use, or wrongfully deprived the plaintiffs of the use and possession of the plaintiffs' goods,—that is to say, one organ," is in trover, and the measure of damages, when the verdict is for the plaintiffs, is the value of the goods at the time of the conversion, with interest from that time to the day of the verdict.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiffs offered the two prayers following:

1.    If the jury believe from the evidence that damages were sustained by reason of the act of the defendants in taking and removing the organ in question, they are not restricted in estimating the extent of the same to such a sum as will compensate the plaintiff for her mere pecuniary loss, but they may take into account all the circumstances connected with the defendants' conduct in

Heinekamp & Son *vs.* Beaty.

the premises, and if they believe from the evidence it was wilful, wanton or oppressive, they may allow exemplary damages for the punishment of the defendants.

2. If the constable in the replevin informed the party in possession of the organ, that the replevin suit was before Justice Maddox, then the judgment in the replevin suit does not avail the defendant in this case.

The defendants offered four prayers, and two special exceptions to the granting of the plaintiffs' prayers as follows:

1. That if the jury find for the plaintiffs from the evidence, that under the pleadings in this case the measure of damages shall be the value of the organ at the time of the alleged conversion, with interest from that time up to the time of verdict.

2. That if the jury find from the evidence that the plaintiff (Margaret) signed the contract offered in evidence, and shall further find that this contract was not changed or altered, and shall further find that by the terms of the said contract the defendants had the right to take the said organ, if any instalment was ten days overdue, and shall find that an instalment or instalments were overdue at the time the said organ was replevied, (provided they find that the said organ was replevied,) then the plaintiffs cannot recover.

3. That if the jury find from the evidence that the organ, with respect to which the present action is brought, is the same organ concerning which the replevin suit offered in evidence was brought and judgment rendered, then their verdict must be for the defendant.

4. That there is no legal and sufficient evidence of a new contract between the plaintiff and the defendants which would entitle the plaintiffs to recover in this case.

The defendants specially excepted to the prayer offered by the plaintiffs in regard to damages, upon the ground that there is no evidence to sustain the said prayer.

Heinekamp & Son *vs.* Beaty.

The defendants specially excepted to the granting of the plaintiffs' second prayer.

First. Because there is no evidence to sustain the same.

Second. Because the judgment in question is impeached in a collateral proceeding.

The Court (DUFFY, J.,) granted the prayers of the plaintiffs and the second and third prayers of the defendants, and rejected the defendants' first and fourth prayers, and also the special exceptions offered by the defendants to the granting of the plaintiffs' prayers.

The defendants excepted, and the verdict and judgment being against them, they appealed.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, BRYAN, MCSHERRY, and BRISCOE, J.

*Alexander Preston,* and *J. Alexander Preston,* for the appellants.

The statute, in express terms, says that a non-suit shall be given, in the event of a failure to give security within a certain time. The Court below held that it was in the discretion of the Court to allow security to be given at any time before trial; the rule is entirely regulated by statute, and if the Legislature intended to vest discretion in the Courts, why is it not in the law? Of what use was it to fix any time for compliance with the rule, if it was not to be regarded?

In the States, where laws similar to this statute, requiring non-resident plaintiffs, before commencing suit, to file a bond for costs, the Courts, in construing such laws, have held that the statute must be followed, and that no discretion existed in the Courts to allow a bond to be filed afterwards. *Morse vs. Rankin,* 51 *Conn.,* 326; *Stillman, Marvin & Hall vs. Dunklin,* 48 *Ala.,* 175; *Ripley vs. Morris,* 2 *Gilman,* 381; *Edgar Gold and Silver Mining*

*Co. vs. Taylor,* 10 *Colorado,* 110; *Sutro vs. Simpson,* 14 *Fed. Rep.,* 370.

*John V. L. Graham,* and *John V. L. Findlay,* for the appellees.

The following authorities were referred to: *Snively & Keys vs. Fahnestock,* 18 *Md.,* 395; *Schindel vs. Schindel,* 12 *Md.,* 108; *Ridgely vs. Bond and Wife,* 17 *Md.,* 14.

BRYAN, J., delivered the opinion of the Court.

Beaty and wife brought suit against Heinekamp and Son. On the twenty-third day of September, 1889, the defendants laid a "rule security for costs" on the ground that the plaintiffs were non-residents; and on the thirtieth day of September, 1890, the defendants moved for judgment of *non pros.* under the rule. On the second day of October the amount of the costs was deposited in Court, and the motion for *non pros.* was overruled. It is obvious that the defendants obtained the full benefit of the rule requiring the plaintiffs to give security for costs. Although the statute says that the plaintiff shall be nonsuited unless he complies with the rule by the second day of the next term, it is not to receive a mere verbal or literal construction. The plaintiffs were undoubtedly in default when they failed to give the security at the required time. But the rule of practice is, that the Courts do not enforce defaults *sua sponte,* and the party who wishes to take advantage of them must make a motion to that effect. The case had been continued several times before the motion for a non-suit was made. It was decided by this Court in *State, use of Wilson vs. McCarty,* 60 *Md.,* 373, that an agreement to continue a case must be considered as a waiver for that term of the right to enforce the "rule security for costs," and it was said "as the case stood on the docket for trial, the plaintiff might have complied with

the rule at any time before judgment of *non pros.*" In *Spencer, et al. vs. Trafford*, 42 *Md.*, 1, a rule security for costs had been laid. After a jury had been sworn the defendants stated to the Court that it had just come to their knowledge for the first time that a rule security for costs had not been complied with by the plaintiff, and they moved the Court to stop the trial until the plaintiff should give the security; the Court refused to do so. This Court said that the defendants ought to have insisted more promptly on the enforcement of the rule, and that it was waived by going to trial. These decisions show that notwithstanding the positive terms of the statute, there is no peremptory requirement that the plaintiff shall be nonsuited if he fails to give the security by the second day of the next term in the absence of a motion to that effect. The case falls within the ordinary rule governing defaults; the motion must be made to enforce the default, and if the rule in question is complied with, before the Court grants the motion, the default is saved. As was said in the case in 60 *Md.*, already cited, in reference to a default under a rule of this very kind, "the plaintiff might have complied with the rule at any time before judgment of *non pros.*" In the present case the motion for non-suit was made on the thirtieth of September; the Court did not act on the motion until the next day but one, and by that time the security had been given. Under the decisions above cited the enforcement of the rule at the previous terms of the Court had been waived by continuances. The Court was not obliged to decide the motion *instanter;* it delayed a reasonable time, and gave the plaintiff an opportunity to give the security. There was no error in this. We do not see in what way the defendants have been injured. The object of the statute was to entitle them to indemnity against possible loss; and this indemnity they received.

Heinekamp & Son *vs.* Beaty.

The declaration in this case contained only one count, which is as follows : "For that the defendants converted to their own use, or wrongfully deprived the plaintiffs of the use and possession of the plaintiffs' goods—that is to say, one organ." In *Manning vs. Brown*, 47 *Md.*, 506, it was held that such a count is in *trover*. When the verdict is for the plaintiff, the measure of damages in this action is the value of the goods at the time of the conversion with interest from that time to the day of the verdict. *Thomas vs. Sternheimer*, 29 *Md.*, 268. The first prayer of the defendants, specially referring to the pleadings, states this legal proposition. The Court refused to grant it, and for this error the judgment must be reversed.

A majority of the Court think that what has been said disposes of the case before us, and that it is not necessary to decide any other questions. But the writer of this opinion, wishes to state his own individual views on other questions which were decided by the Court below, and which appear in the exceptions taken at the trial. The defendants caused a writ of replevin to be issued against the plaintiffs under which a certain organ or piano was seized. The writ was returnable before a justice of the peace, who after two returns of *"non est,"* rendered judgment *ex parte* for the plaintiffs in the replevin suit, who are the present defendants. The right to proceed to trial and judgment under such circumstances is expressly given in the forty-ninth section of Article 52 of the Code of Public General Laws. While a judgment *in personam* cannot bind a party who has not been summoned ; it is well settled that it is competent for the Legislature to authorize judgments binding goods, chattels, lands, tenements, etc., after seizure under legal process ; even if the owner or supposed owner should not be personally summoned. It is on this principle, that attachments are sustained against the prop-

erty of non-resident debtors. The judgment in replevin legally vested the right of possession in the plaintiffs in that suit, and was sufficient to defeat this action under the present pleadings. But other questions are suggested by the evidence, which the appellees ought to have an opportunity of bringing to a decision under an amendment of the pleadings. The plaintiffs below offered evidence tending to prove that they had a good defence to the replevin suit, and that the defendants by false information purposely given through their agent, as to the place of trial and the particular magistrate before whom it was to take place, wrongfully and intentionally prevented them from defending said suit, with the design of defrauding them of their property. The defendants below offered evidence tending to disprove all these allegations. I have no right to intimate any opinion on the credibility of the testimony, nor have I the slightest intention of doing so. It is well settled that malicious abuse of the process of the law will subject the person perpetrating the abuse to an action for damages. *Grainger vs. Hill*, 4 *Bingham's New Cases*, 212. In such cases the inquiry is not whether the suit which the process commenced has been determined or not, or, whether it was founded on reasonable and probable cause, but whether the process has been used to effect an unlawful object. Many cases may be found which illustrate this principle. To obstruct by fraudulent means the administration of justice is a grievous wrong, which gives a right of action to those who sustain damage from it. The law does not permit the perversion of its process from its legitimate ends. It has been held that the vexatious suing out of a second *capias*, pending a former writ; the levying execution for double the amount of the debt; the arrest on a *ca. sa.* for more than is due, are actionable abuses of process. These are merely instances of this kind of tortious con-

duct.  In *Wanzer, et al. vs. Bright*, 52 *Ill.*, 35, a debtor was by false statements decoyed within the jurisdiction of a Court, and there arrested in a civil action; although the debt was justly due, the fraudulent means used were held to entitle the debtor to exemplary damages.  There have been cases where judgments have been obtained by this kind of abuse, and it has been held that they did not establish a reasonable and probable cause of action.  In *Burt vs. Place*, 4 *Wendell*, 591, judgment had been obtained by Place against Burt before a justice of the peace.  Burt brought an action against Place, and proved that he had good defences in the suits before the justice, but that he was prevented from making them, because Place had maliciously and vexatiously caused him to be arrested and detained in custody until the judgments were rendered, and that the imprisonment was for the very purpose of preventing defences to these suits.  The Court held that Place's conduct was an iniquitous abuse of the process of the law to accomplish an "illegal purpose ;" that the evidence showed "a case of flagrant oppression" and that there was no probable cause for the suits before the justice of the peace ; and that Burt was entitled to vindictive damages.  In *Spring & Stepp vs. Besore*, 12 *B. Monroe*, 551, the Court of Appeals of Kentucky say that a party against whom a judgment or decree has been rendered may counteract its effect and show that it was rendered without probable cause, if he can show that it was unfairly obtained and was the result of acts of fraud, malice, and oppression on the part of the adverse party, which had the effect, and were designed to have the effect of depriving him of the necessary means of defeating the suit, and obtaining a decision in his favor.  The same doctrine in effect is held in *Payson vs. Caswell*, 22 *Me.*, 212.  These cases are cited with approval by the Supreme Court of the United States in *Crescent Live Stock Co. vs. Butchers' Union*, 120 *United States*, 150-151.

Heinekamp & Son *vs.* Beaty.

If the plaintiffs had brought a special action on the case, and averred the fraudulent conduct of the defendants, which they allege in this suit, and that they were thereby prevented from establishing a good defence to the action of replevin, as they would otherwise have done, and had maintained their averments to the satisfaction of the jury, they would have been entitled to vindictive damages; but they cannot recover such damages under the pleadings in this case. My opinion on the questions presented by the prayers is sufficiently shown by what I have said. I think that there ought to be a new trial, and that the plaintiffs have a right to amend the pleadings as they may be advised.

> *Judgment reversed, and*
> *new trial ordered.*

(Decided 17th June, 1891.)

Judge IRVING delivered the following dissenting opinion, in which Chief Judge ALVEY concurred:

We regret our inability to concur with the majority of the Court in remanding this case for a new trial. We agree with them in thinking an error was committed in laying down the rule for the measure of damages in the case, and that the rule for the admeasurement of damages in a case of trover, which this is, has been correctly stated in the opinion of Judge BRYAN speaking for the majority of the Court. We are of opinion, however, that the judgment should be reversed without allowing a new trial, because of the error, as we regard it, of the Court, in refusing a non-suit, for non-compliance with the rule security for costs, when motion was made therefor. This rule was asked for and laid on the 23rd of September, 1889. Section 9 of Art. 24 of the Code provides, that when such rule is laid "the plaintiff shall have until the second day of the next term to comply

therewith, and on his failure to do so, he *shall be non-suited."*

When the rule was laid, the plaintiff by the statute had till the second day of the next term to comply with it, and no longer. When the January Term came, and the rule was not complied with, the defendants were entitled to have the plaintiffs *nonsuited* upon motion therefor. At that term no motion was made for non-suit. It was not made till September Term, 1890. We were told at the hearing that meanwhile the case went on the *stet* docket; but the record does not show this; and it does not show that the case was regularly continued and was so brought forward. It does not appear that defendants ever assented to a continuance so as to work a waiver of their rights, under it, as was ruled in *State, use of Wilson vs. McCarty*, 60 *Md.*, 375, had been done in that case by consent given at a *term* subsequent to the expiration of the rule. The appellant had waived nothing. He had simply delayed making the motion for *non pros.*

It has been contended that being a statute of indemnity, it was perfectly competent for the Court to extend the rule, or accept deposit of costs at any time before trial actually had. This it is said has been the practice in Baltimore and elsewhere in the State. It has certainly not been universal. It has never been the practice or construction of the statute in the circuits which we represent. In our opinion it ought not to be the practice, for it is directly contrary to the statute. And we do not think that the *McCarty Case* justifies anything beyond acceptance of compliance at the moment motion is made for *non pros.*, and even that we think unwarranted by the statute. It certainly gives no countenance to an enlargement of the rule. Here acceptance of deposit was secured several days after motion for judgment for non-compliance. It is a statute of indemnity, but that indemnity is to be furnished by a time fixed by

the statute, which no power is given to the Court to enlarge. That rule may be waived by the party defendant, and a new rule may be laid on his motion, but his right under the statute is *fixed and certain.* It says the plaintiff *"shall be nonsuited,"* for non-compliance by the time set. It is peremptory, and the Court has no right against the will of the defendant to deny him his motion for non-suit.

In *Morse vs. Rankin,* 51 *Conn.,* 327, the lower Court allowed the plaintiff to give bond before trial, and proceeded to hear the case. The Appellate Court reversed the judgment, and said the statute which provided that when the suit was sued out, the party being a non-resident, should give bond for costs, was peremptory, and the Court erred in accepting bond afterwards.

In Illinois, the statute provides that the suit shall be dismissed, if, when action is commenced the non-resident plaintiff does not give bond for costs. In *Ripley vs. Morris,* 2 *Gilman,* 381, on that statute, it was ruled that it was peremptory.

In *Stillman, Marvin & Hall vs. Dunklin,* 48 *Alabama,* 175, on a statute similar to the Illinois' statute, a like ruling was made. In that case there had been continuances from term to term, and the motion was not made for dismissal until the term when it was acted on by the Court, and the case was dismissed. On appeal the Court said the statute was "a peremptory command." "Its meaning and purpose are perfectly clear from all doubt. The Court has no discretion but to execute it, when called on to do so in the proper way; that is on motion made in the cause by a party entitled to its benefit."

The Court further said with reference to the *time* when the motion was made: "In such case the Court has no power to imply a limitation by construction. This would be equivalent to a *judicial amendment of the law* which Courts are not authorized to make." In Colorado a like

Heinekamp & Son *vs.* Beaty.

provision exists, and in *Sutro vs. Simpson,* 14 *Fed. Rep.,* 370, the United States Circuit Court for Colorado decided that a bond given two days after writ issued came too late, and suit was dismissed. And the Court of Appeals of Colorado in *Edgar Gold and Silver Mining Co. vs. Taylor,* 10 *Col.,* 110, decided that tender of costs bond in Court after action brought, though before motion to dismiss entered, came too late. All these statutes are, like ours, statutes of indemnity, but the Courts were not allowed to relieve the plaintiff from stringent requirements of the statute as to the time when that indemnity should be given.

Our statute is as imperative as any of the statutes of the States, whose decisions we have cited. Its language could not be more positive. It fixes a date before which the security for costs must be given, and does not leave it to the Court in its discretion to fix a date conformable to the probable convenience of the party laid under rule; and if the rule be not complied with by the time fixed by the statute, the statute then proceeds to direct that the "plaintiff shall be nonsuited."

No discretion is left the Court to consider excuses and extend the time. If the statute had intended that for good cause shown the rule might be extended, it would have said so, and would not have positively directed a non-suit for non-compliance. The Court has no more discretion to extend for a day than it would have, in the face of the statute, to extend the time till the succeeding term after default. The language is so positive that any implication of discretion to enlarge the rule is, we think, absolutely excluded, and there is no escape from executing the statute's discretion. From the time of default the appellants were entitled to be fully discharged from responding to the suit, and to judgment for costs. For the Court, nine months after failure to comply with the rule laid under the statute, to deny non-suit, and allow

deposit of costs, and compel trial, was, in our opinion, fatal error. Chief Judge ALVEY bids me say he concurs with me in these views.

(Filed 17th June, 1891.)