792 A.2d 325

FIRST WHOLESALE CLEANERS INC. t/a Queens Cleaners,

v.

DONEGAL MUTUAL INSURANCE COMPANY.

No. 02828, Sept. Term, 2000.

Court of Special Appeals of Maryland.

Feb. 28, 2002.

Joel Marc Abramson, Columbia, for appellant.

Jeanie L. Scherrer (Jeffrey A. Wothers and Niles, Barton & Wilmer, LLP, on the brief), Baltimore, for appellee.

Argued before HOLLANDER, SONNER, and CHARLES E. MOYLAN, Jr. (Retired, Specially Assigned) JJ.

HOLLANDER, Judge.

This case is an example of the proverbial "rush to judgment." Here, judgment was granted in favor of the defendant because the plaintiff failed to file timely an amended complaint after the case was removed by the defendant from the District Court for Anne Arundel County to the Circuit Court for Anne Arundel County.

In July 2000, First Wholesale Cleaners Inc., t/a Queens Cleaners ("Wholesale"), appellant, filed suit against Donegal Mutual Insurance Company ("Donegal"), appellee, in the District Court. Appellant alleged that Donegal breached its contract of insurance by failing to satisfy Wholesale with respect to a loss it had sustained in August 1997. Pursuant to

appellee's request for a jury trial, the case was transferred to the circuit court in October 1997. Within a month, appellant's lawyer withdrew from the case. Then, in January 2001, the circuit court granted appellee's motion to strike and dismissed the suit, with prejudice, because appellant did not file its amended complaint in the time prescribed by the circuit court.

On appeal, Wholesale presents two questions:

I. Did the circuit court err as a matter of law in granting Appellee's Motion to Strike Complaint by default thereby striking Appellant's Complaint and dismissing its case with prejudice?

II. Did the circuit court abused [sic] its discretion in granting Appellee's Motion to Strike Complaint by default thereby striking Appellant's Complaint and dismissing its case with prejudice?

Among other things, appellee asks:

Should the Appeal be dismissed because the owner of the corporation filed the Notice of Appeal on behalf of the Appellant corporation, making such filing a nullity?

For the reasons that follow, we shall vacate the judgment and remand for further proceedings.

## FACTUAL SUMMARY

On July 13, 2000, Wholesale, through counsel, instituted suit in the District Court against Donegal for breach of an insurance contract. Wholesale sought to recover $25,000 in damages, claiming that Donegal failed to pay monies due and owing under an insurance policy issued to Wholesale, in regard to a loss that appellant incurred in August 1997. On or about September 27, 2000, Donegal prayed a jury trial. Accordingly, the case was transferred to the circuit court on October 6, 2000.

By letter dated October 5, 2000, appellant's counsel, Paul Bennett, sent a letter to Adebisi Anthony A'Denariwo, Wholesale's sole owner, advising of his intent to withdraw as counsel for Wholesale. The letter said, in part:

[P]lease be advised that I will file my withdrawal as your attorney with the court in the above referenced matter in five days. My office has been advised that [Donegal] has requested a jury trial, and the case will be transferred to the Circuit Court. *You have the option of having another attorney enter an appearance in the case or of notifying the court clerk in writing of your intention to proceed and represent yourself.*

(Emphasis added).

On October 16, 2000, Bennett filed a motion to withdraw his appearance, and attached as an exhibit his letter to A'Denari-wo of October 5, 2000. The motion was granted by order dated November 6, 2000. On November 8, 2000, when the order was docketed, the court sent notice to Wholesale, stating, in relevant part:

It appears from the record in the . . . case that you are not . . . represented by counsel.

You are hereby notified this day, that your failure to have new counsel enter his appearance in this case within fifteen (15) days after service upon you of this notice shall not be grounds for postponing any further proceedings, concerning the case. You are warned that without counsel to protect your interests in the case, you risk a nonsuit or judgment by default and all court costs being ordered against you by the court. . . .

In the meantime, on November 6, 2000, appellee filed a Motion for More Definite Statement, pursuant to Maryland Rule 2–322(d), asserting that appellant's District Court complaint was "so general, vague and ambiguous that movant cannot reasonably frame an answer." Appellee sought such information as appellant's policy number, date of loss, nature of the claim, and the reason that the claim was denied. By Order dated November 29, 2000, docketed on November 30, 2000, the court granted appellee's motion, and ordered appellant to file an amended complaint within thirty days.

On January 2, 2001, when appellant had not yet filed its amended complaint, appellee filed a "Motion to Strike Com-

plaint," requesting dismissal of the case, with prejudice.[1]  Although the motion was filed on that date with the court, the certificate of service indicates that appellee chose to serve the motion on appellant by mailing it on that date.

On January 23, 2001, A'Denariwo, as "owner" of Wholesale and its "only principal officer," filed a response to the motion to strike, titled "Plaintiff First Wholesale Cleaners, Inc[.] Response Motion Not to Grant the Defendant's Motion to Strike With Prejudice."  According to the certificate of service, the opposition to the motion to strike had already been mailed to appellee's attorney on January 8, 2001.  A'Denariwo included a sworn affidavit in which he averred that he had not received a copy of the court's order requiring Wholesale to file an amended complaint.  Furthermore, he stated that he was the only person with sufficient personal knowledge to respond for Wholesale, and he had been away on vacation from November 22, 2000 to January 3, 2001—his first vacation in nine years.  Additionally, he asserted that he was "making progress for arrangement for a new counsel," but told the court that, "because of statue [sic] of limitation, if this honorable court favorably grant the defendant's Motion to Strike we would not be able to refile this case...." On behalf of Wholesale, A'Denariwo also filed a "Response To Order," in answer to the Motion For More Definite Statement.

The next day, January 24, 2001, the circuit court granted appellee's motion to strike and dismissed appellant's suit, with prejudice.  In doing so, the court signed appellee's proposed order, but added that the motion was granted "by default." Because the court did not mention the opposition to the motion to strike, filed the day before, we cannot determine with certainty whether the judge was aware of the opposition when he ruled on the motion to strike.  In view of the "by default" language added by the judge, however, it is reason-

---

1.  As we shall discuss, *infra,* December 30, 2000, fell on a Saturday, and Monday, January 1, 2001, was New Year's Day. Therefore, if the amended complaint was to be filed thirty days from November 30, 2000, it would not have been due until the close of business on January 2, 2001, the same day that appellee filed the motion to strike.

able to assume that the judge had no knowledge of the opposition.

After the suit was dismissed, A'Denariwo filed a notice of appeal on behalf of Wholesale. The notice of appeal states in its entirety: "FIRST WHOLESALE CLEANERS, Inc[.], notices an appeal to the Court of Special Appeals in the above-captioned action." Wholesale subsequently retained a lawyer to prepare its appellate brief and to present oral argument.

We shall include additional facts in our discussion.

## DISCUSSION

### I.

■ Preliminarily, appellee urges the Court to dismiss the appeal as a nullity, because Wholesale, the appellant, is a corporation, A'Denariwo is not a lawyer, and therefore A'Denariwo was not allowed to file the appeal on behalf of Wholesale. We decline appellee's invitation.

Maryland Rule 2–131 requires that, ordinarily, a lawyer must represent a corporation in court. It states, in pertinent part:

**Rule 2–131. Appearance.**

(a) Except as otherwise provided by rule or statute:(1) an individual may enter an appearance by an attorney or in proper person and (2) a person other than an individual may enter an appearance only by an attorney.

A corporation is considered a "person" for purposes of the rule. *See* Rule 1–202(r)(stating that "Person" includes, *inter alia,* a corporation).

Other rules and statutory provisions are also relevant. Maryland Rule 1–311(a) states that "[e]very pleading and paper of a party represented by an attorney shall be signed by at least one attorney who has been admitted to practice in this State. . . ." Under Rule 1–311(c), "if a pleading or paper is not signed as required . . . or is signed with intent to defeat the purpose of this Rule, it may be stricken and the action may

proceed as though the pleading had not been filed." Similarly, Md. Rule 8–402(d) pertaining to the appellate courts, states: "A corporation may enter an appearance only by an attorney, except as otherwise provided by rule or statute."

Sections 10–206 and 10–601 of the Business Occupations and Professions Article ("B.O.P.") of the Maryland Code (2000) are also relevant. B.O.P. § 10–206(a) provides, in relevant part:

### § 10–206. Admission required; exceptions.

(a) *Admission required.*—Except as otherwise provided by law, before an individual may practice law in the State, the individual shall:

(1)be admitted to the Bar; and

(2) meet any requirement that the Court of Appeals may set by rule.

B.O.P. § 10–206(b) enumerates certain exceptions to the requirement that a corporation must be represented in court by an attorney. In part, § 10–206(b)(4)(i)(1) permits a corporate officer to appear on behalf of the corporation in a civil action in District Court, so long as the claim does not exceed the amount set forth for a small claim action under Md.Code (1974, 1998 Repl.Vol.), § 4–405 of the Courts & Judicial Proceedings Article ("C.J."). That sum is $2500.

B.O.P. § 10–601(a) states, in pertinent part:

### § 10–601. Practicing without admission to Bar.

(a) *In general.*—Except as otherwise provided by law, a person may not practice, attempt to practice, or offer to practice law in the State unless admitted to the Bar.

*Turkey Point Property Owners' Association, Inc. v. Anderson*, 106 Md.App. 710, 715, 666 A.2d 904 (1995), is also instructive. There, the Court recognized that "[t]he requirement of Rule 2–131(a)(2) that corporations be represented in the circuit court by attorneys reflects a long history of legislation prohibiting lay persons from practicing law except in those situations in which they are acting *pro se.*" Moreover, we acknowledged that " '[t]he goal of the prohibition against unauthorized practice is to protect the public from being

preyed upon by those not competent to practice law—from incompetent, unethical, or irresponsible representation.' " *Id.* at 717, 666 A.2d 904 (quoting *In re Application of R.G.S.,* 312 Md. 626, 638, 541 A.2d 977 (1988)). Accordingly, the Court dismissed an appeal in which a lay person purported to represent a corporation in circuit court.

The appellant, Turkey Point Property Owners' Association, Inc. ("the Association"), a corporation, had petitioned the circuit court for review of a decision by a local zoning board. Although the Association had been represented by counsel in the administrative proceedings, the petition for judicial review was signed by the Association's president, who was not an attorney. The Association's president also submitted a legal memorandum, and then appeared in court on behalf of the Association. The appellees objected, arguing that because the Association was not represented by an attorney, the petition for review was invalid.

Although the Association's president did not use coercion or trickery to persuade the Association to accept her services as to representation, and the trial court had expressly allowed the president to proceed, we nonetheless concluded that "the prohibition against the practice of law by nonlawyers applie[d] to this situation." *Turkey Point,* 106 Md.App. at 717, 666 A.2d 904. The Court explained, at 106 Md.App. at 715, 666 A.2d 904: "There is no dispute that, by filing the petition for judicial review, *then representing the Association in the trial court,* [the president] engaged in the practice of law." (Emphasis added). In its analysis, the Court said:

Although Rule 2–131(a)(2) requires that a corporation such as the Association be represented by an attorney in the circuit court, it sets forth no sanction for noncompliance. Rule 2–201,[2] however, provides, that 'if no consequences are prescribed, the court may compel compliance with the rule or may determine the consequences of the noncompliance in

---

2. We believe the Court meant to cite Rule 1–201.

light of the totality of the circumstances.' As a general rule in other jurisdictions,

> "[p]roceedings in a suit by a person not entitled to practice are a nullity, and if appropriate steps are timely taken the suit may be dismissed. . . . If the case has proceeded to judgment, the judgment is void and will be reversed. Furthermore, the acts or steps of the unauthorized practitioner will be disregarded, and the papers and documents drafted should be stricken."

*Id.* at 718, 666 A.2d 904 (quoting 7 C.J.S. Attorney & Client § 31 at 869 (1980))(footnotes omitted).

Accordingly, we determined that the trial court "erred by accepting the petition for judicial review that [the president] prepared and signed, and by permitting her to represent the Association at the hearing on the petition." *Id.* at 719, 666 A.2d 904. Moreover, because the petition and the proceedings before the trial court were deemed "a nullity," the Court vacated the judgment and dismissed the case. *Turkey Point,* 106 Md.App. at 720, 666 A.2d 904.

*Turkey Point* is factually distinguishable from the instant case, however. Here, Wholesale properly acted through counsel when it initially filed suit. Then, when the case was transferred to circuit court upon appellee's request, Wholesale's attorney, Bennett, withdrew from the case. In doing so, Bennett wrote to A'Denariwo, the corporate owner, and incorrectly advised A'Denariwo that he had the option of representing himself. As A'Denariwo was not himself a party, but was the sole owner of the corporation, the party plaintiff, A'Denariwo may have been led to believe by Wholesale's attorney that he could act on Wholesale's behalf. In any event, A'Denariwo claimed below that he was attempting to arrange for another attorney, but had been on vacation for a month.

Moreover, when A'Denariwo filed the notice of appeal on behalf of Wholesale, it was evidently a protective course of action, meant to preserve the corporation's right to appeal, which had to be filed within thirty days from the entry of judgment. See Maryland Rule 8–202(a). Its content was

skeletal, without any legal substance, quite unlike the memorandum submitted in *Turkey Point.* Indeed, the filing itself was tantamount to a "ministerial act...." *County Council of Prince George's County v. Dutcher,* 365 Md. 399, 416, 780 A.2d 1137 (2001).

It is also noteworthy that, after filing the notice of appeal, Wholesale obtained legal counsel for purposes of pursuing the appeal; A'Denariwo neither prepared the brief nor sought to argue the appeal. In stark contrast, *Turkey Point* involved the submission of a substantive legal memorandum by a lay person, and an actual attempt by that person to represent the corporation in court.

■ As the *Turkey Point* Court observed, Rule 2–131(a) does not mandate any particular sanction. Therefore, even if the filing of the notice of appeal by A'Denariwo constituted the unauthorized practice of law, dismissal of the appeal is not compelled by the rule. Moreover, *Ginn v. Farley,* 43 Md.App. 229, 403 A.2d 858 (1979), suggests that an appellate court has some discretion when confronted with a case such as this one.

In *Ginn,* a nonlawyer represented herself and other persons in a zoning case, although she was not personally an aggrieved individual under zoning law. After the proceedings in the circuit court, she noted an appeal to this Court and prepared both the brief and record extract. Chief Judge Gilbert wrote for the Court that " 'what constitutes the practice of law is vested solely in the judicial branch of government....' " *Id.* at 232, 403 A.2d 858 (citation omitted). He added that the judiciary alone has " '[t]he power to regulate and define what constitutes the practice of law....' " *Id.* Accordingly, the Court dismissed the appeal of the nonlawyer, concluding that the conduct constituted the unauthorized practice of law. *Id.* at 233, 403 A.2d 858. But, it declined to dismiss the appeals of the other individuals. Instead, one person argued for himself, and the Court treated the others as having submitted on brief. The Court said:

It might be argued that we should dismiss the appeal as to all appellants because the brief was written in their behalf

by Ms. Ginn. We know of no rule or procedure that requires such action, nor shall we impose it . . . .

*Id.* at 233 n. 8, 403 A.2d 858.

Other jurisdictions have recognized that there is discretion in regard to the issue of dismissal of a non-lawyer's pleadings on behalf of a corporation. For example, in *BQP Industries, Inc. v. State,* 694 P.2d 337 (Colo.App.1984), *aff'd.,* 770 P.2d 1189 (Colo.1989), ten corporate taxpayers appealed judgments of the trial court entered against them in connection with judicial review of an agency action. Each corporation initiated administrative review by submission of the prescribed form through an officer or director, as agent. But, each corporation subsequently pursued its appeal through an attorney. Nevertheless, the trial court dismissed the appeals on the ground that the applications were void because they had been signed by nonlawyer officers or directors of the corporations. *See id.* at 341. The appellate court disagreed. Relying, *inter alia,* on *Ginn v. Farley,* it said:

We agree that a corporation can only appear in court by a licensed attorney and that proceedings instituted in violation of this rule are void. A corporation is an artificial entity created by law. Thus, unlike a natural person, it cannot appear or act in a judicial proceeding in person, but rather must act in legal matters through a licensed attorney. And, while the BAA is an administrative agency, it acts in a quasi-judicial capacity when it resolves disputes of adjudicative facts.

The question whether the preparation and filing of [the form] constitutes the practice of law depends upon the totality of the circumstances and the character of the act. The completion of this form does not require any knowledge and skill beyond that possessed by an ordinary, intelligent taxpayer. Thus, its preparation and filing is sufficiently informal to permit completion by a corporation through its officer or director.

Under the circumstances at issue, we know of no rule of law or procedure that requires or justifies dismissal of these

corporate taxpayers' administrative petitions for review. Thus, we hold that the trial court erred in dismissing their complaints.

*Id.* at 341–42 (internal citations omitted).

Similarly, in *Szteinbaum v. Kaes Inversiones y Valores, C.A.*, 476 So.2d 247 (Fla.App.1985), the court considered "whether a complaint filed by a non-attorney on behalf of a corporation may be amended to cure this deficiency." *Id.* The trial court initially dismissed the complaint, without prejudice, because the corporate plaintiff was not represented by a lawyer. Although an amended complaint was filed by an attorney, the defendant moved again to dismiss, arguing that the first complaint was a nullity. When that motion was denied, the defendant appealed.

On appeal, the court said that "there can be little doubt that the act of filing a complaint constitutes the practice of law. . . ." *Id.* at 248. Nevertheless, it recognized that "[c]ourts have reflexively applied" the rules barring the unauthorized practice of law. *Id.* It noted, too, that the record did not reflect that the corporation had "proceeded with knowledge of the impropriety of its actions," *id.* at 251, or that the defendant had actually been prejudiced by what occurred. *Id.* at 252. The court concluded that the corporation's initial failure to act through counsel was cured when the amended complaint was filed by an attorney. *Szteinbaum*, 476 So.2d at 250.

In reaching that result, the Court reasoned:

[P]ublic policy dictates that, whenever possible, cases 'should be determined on their merits, instead of upon irrelevant technicalities.' Thus, dismissal of the amended complaint in the present case in derogation of this 'welcome policy' is warranted only if it can be said that treating the defect of the initial complaint as incurable will somehow substantially advance some other more compelling public policy.

To be sure, the 'protection of the public from incompetent, unethical, or irresponsible representation' through the prevention of the unauthorized practice of law is a compel-

ling public policy. We suggest, however, that this latter policy is not served by a rule of law that declares that a complaint filed by a non-attorney on behalf of a corporation cannot be cured by the later appearance of counsel to represent the corporation and, moreover, that such a rule of law disserves the policy that cases should be decided on their merits. Where, as here, the representation of the plaintiff corporation, confined as it was to the filing of the complaint, was brief, minimal and essentially innocuous, the unauthorized practice of law was adequately curtailed by the trial judge's eminently sensible decision to allow an attorney to appear for the corporation and thereby amend the complaint.... Indeed, prohibiting amendment and dismissing as a nullity the complaint would yield the ironic result of prejudicing the constituents of the corporation, the very people sought to be protected by the rule against the unauthorized practice of law.

\* \* \*

In short, only unquestioning adherence to the rigid mechanistic rule ... would require the draconian measure of nullifying a complaint filed by a non-attorney on behalf of a corporation.

\* \* \*

We therefore conclude that the defect of the complaint herein was curable and indeed cured by the later appearance in the action of the plaintiff corporation's attorney. The draconian sanction of dismissal without leave to amend is unduly harsh in light of the prejudice to the unwary corporate constituents and the total lack of prejudice to the defendant.

*Id.* at 249–52. (Footnotes and internal citations omitted).

*Starrett v. Shepard,* 606 P.2d 1247 (Wyo.1980), also provides guidance. There, the court considered whether to enter a default judgment against a corporation because "a non-lawyer corporate officer filed a motion to quash service of summons" on the corporation. *Id.* at 1253. After the corporate officer

filed the motion to quash, the defendants, who were also third-party plaintiffs, moved to strike the motion and for a default judgment, claiming that the corporate officer was a non-lawyer. *See id.* Thereafter, an attorney appeared for the corporation and represented it throughout the case. *See id.* The trial court held that "the improper appearance of [the corporation] through a non-lawyer corporate officer was 'cured' by the subsequent proper appearance ... through an attorney." *Id.* On appeal, the court affirmed. It reasoned, at 606 P.2d at 1253–54:

Pleadings filed and actions taken by a non-lawyer corporate officer in a legal action are subject to be stricken or held to be a nullity; and there may be cases in which entry of a default judgment against a corporation may be justified on the ground that the corporation was improperly represented in the action by a non-lawyer corporate officer, but such is not justified in a case such as this, wherein the representation was very limited. The record does not reflect that the representation was made with knowledge of its impropriety, it was followed within a reasonable time by proper representation through an attorney admitted to practice before the court, and the other party was not substantially prejudiced thereby.

■ Based on the foregoing, we conclude that an appellate court has discretion in determining whether to dismiss an appeal under the circumstances presented here. To be sure, such discretion should be exercised cautiously and used sparingly, in light of the longstanding prohibition of lay persons engaging in the unauthorized practice of law, and the requirement that corporations appear in court through legal counsel. Nonetheless, in light of the totality of circumstances, we are satisfied that, in the exercise of our discretion, the appeal ought not be dismissed. To do so would not serve the interests of justice.

## II.

■ Appellant contends that the trial court erred or abused its discretion by granting appellee's motion to strike, and then

dismissing the case, with prejudice, "by default." Appellant complains that the court failed "to follow the dictates of the rule regarding default judgments," which prejudiced appellant. For example, appellant argues that it was entitled to notice of a default order and the right to move to vacate the order, yet no such notice was provided. In our view, appellant's analysis of what occurred is misguided.

Maryland Rule 2–613 governs default judgments. It is clear that the rule had no application here, because appellant was the plaintiff, appellee was the defendant, and the rule provides that when the *defendant* fails to plead, the *plaintiff,* on written request, may seek an order of default. Maryland Rule 2–613(b). Thereafter, *"[t]he defendant may move to vacate the order of default within 30 days after its entry."* Maryland Rule 2–613(d) (emphasis added). In this case, it was appellee, as the defendant, who sought to dismiss the case. In doing so, Donegal never relied on Rule 2–613.

A'Denariwo filed the "Response Motion Not to Grant the Defendant's Motion to Strike with Prejudice" on January 23, 2001. The next day, January 24, 2001, the court signed the proposed order submitted by appellee, granting the motion to strike; that order was then docketed on January 25, 2001. The order states: "Upon consideration of Defendant's Motion to Strike the Complaint and any/*no response* filed thereto. . . ." (Emphasis added). The order also provides: "IT IS HEREBY ORDERED, this 24th day of January, 2001, that Defendant's Motion to Strike be and is hereby GRANTED *by default.* . . ." (Emphasis added). The words "by default" were added by the court, by hand, to appellee's proposed order. Further, the order provides that "Plaintiff's Complaint . . . be and is hereby STRICKEN, and the above entitled action is hereby DISMISSED with prejudice."

As we see it, the court did not intend to grant a default judgment merely because it added the words "by default" to appellee's proposed order. Indeed, given the posture of the case, the court could not treat appellee's motion to strike as a request for default judgment under Rule 2–613. Rather, it is

evident that the court inserted the words "by default" because it was unaware that, just one day earlier, appellant filed an opposition to the motion to strike; the words "by default" reflect the court's belief that no opposition had been filed by Wholesale.

Although we do not agree with appellant's contention that the court improperly entered an order of default under Rule 2–613, we do agree with appellant that the court abused its discretion in granting the motion to strike and dismissing the case, with prejudice. We explain.

As we noted earlier, in the circuit court Donegal filed a Motion for More Definite Statement, arguing that the original complaint, filed in the District Court, was too vague for it to frame an answer. The circuit court's order granting appellee's motion was docketed on November 30, 2000. Among other things, it ordered Wholesale to file an amended complaint within thirty days. Because December 30, 2000, fell on a Saturday, appellant's complaint was not due until the next business day. *See* Maryland Rule 1–203(a)(1). The following Monday was not a business day, however; it was New Year's Day, January 1, 2001. Therefore, the amended complaint could not have been due until the end of the next business day on Tuesday, January 2, 2001. *Id.* In addition, pursuant to Md. Rule 1–203(c), appellant had an additional three days to file its amended complaint, because service of the court's order was made by mail.[3] Therefore, Wholesale's pleading was not due until the end of the work day on January 5, 2001. It follows that appellee prematurely filed its motion to strike on January 2, 2001, three days before appellant's amended complaint was due. Without excusing appellant's tardiness, Donegal's premature action set in motion a chain of events that culminated in the dismissal of appellant's case.

When a plaintiff fails timely to comply with a deadline set by the court, the complaint is subject to a motion to strike under Rule 2–322(e). That rule states:

---

**3.** For reasons not clear to us, appellant has not relied on these rules, nor argued that the motion to strike was prematurely filed.

(e) **Motion to strike.** On motion made by a party before responding to a pleading or, if no responsive pleading is required by these rules, on motion made by a party within 15 days after the service of the pleading or on the court's own initiative at any time, the court may order any insufficient defense or any improper, immaterial, impertinent, or scandalous matter stricken from any pleading *or may order any pleading that is late or otherwise not in compliance with these rules stricken in its entirety.*

(Emphasis added).

Appellant contends, however, that the court should grant a motion to strike only when "egregious circumstances when prejudice can be shown." *See* Paul V. Niemeyer & Linda M. Richards, MARYLAND RULES COMMENTARY 151 (1984). Appellant argues:

There are other mechanisms for bringing a matter to final resolution such as by way of a motion to dismiss, a motion for summary judgment, or a motion for default. In the instant case, Appellee filed a motion to strike requesting that the Appellant's Complaint be stricken and dismissed. Appellee, however, failed to state what the egregious circumstances were to entitle it to such draconian relief or how Appellee had suffered prejudice as a result of Appellant's late filing of its amended complaint.

The decision whether to grant a motion to strike is within the sound discretion of the trial court. *Lancaster v. Gardiner,* 225 Md. 260, 269–70, 170 A.2d 181, *cert. denied,* 368 U.S. 836, 82 S.Ct. 63, 7 L.Ed.2d 37 (1961); *Patapsco Assoc. Ltd. Part. v. Gurany,* 80 Md.App. 200, 204, 560 A.2d 611 (1989). But, we have held "that such a motion should be granted only if the delay prejudices the defendant." *Garrett v. State,* 124 Md.App. 23, 27, 720 A.2d 1193 (1998); *see also Patapsco Associates Limited Partnership,* 80 Md.App. at 204, 560 A.2d 611.

Neither party has cited *Garrett,* 124 Md.App. 23, 720 A.2d 1193, yet it is certainly pertinent. In *Garrett,* we held that when "a motion to strike has been filed in response to a

tardily-filed complaint . . . the moving party has the burden of proving that it has been prejudiced by the tardiness." *Id.* at 31, 720 A.2d 1193. There, the plaintiff's case was one over which both the District Court and the circuit court had concurrent jurisdiction. After the case was transferred to circuit court, the plaintiff failed to file timely her complaint, and therefore the defense moved to strike. In response, the plaintiff claimed that the defendant had the burden to establish prejudice from the delayed filing and failed to meet that burden. The circuit court granted the motion to strike, without a hearing. On appeal, because there was no indication that the defendant suffered any prejudice from the delayed filing, we concluded that the court should not have granted the motion. *See also Patapsco Assoc. Ltd. Part.*, 80 Md.App. at 204, 560 A.2d 611 ("in deciding a motion to strike for failure to file a pleading timely, [courts] should afford 'great liberality in the allowance of amendments in order to prevent the substantial injustice of a cause from being defeated by formal slips or slight variances.' " (Citation omitted)).

Based on *Garrett*, we consider it significant that the word "prejudice" does not appear anywhere in appellee's motion to strike. Yet, under the circumstances attendant here, appellee had the burden to show that it was prejudiced by the delay. Thus, we conclude that the circuit court erred or abused its discretion in granting the motion to strike, and in dismissing the case with prejudice. We add that if the court was of the view that some sanction was appropriate, surely a less draconian measure could have been imposed.

**JUDGMENT VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR FURTHER PROCEEDINGS; COSTS TO BE PAID BY APPELLEE.**